UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEVIN L. MARTIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:16-cv-357-JD |
| | ) |
| CASEWORKER SINDER, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

While Plaintiff Kevin Martin was incarcerated, another inmate started a fire outside of his prison cell. Thereafter, the Plaintiff sued Defendant Sinder for violating the Eighth Amendment's prohibition on cruel and unusual punishment. *See* Am. Compl., p. 3, DE 62. The Defendant argues she is entitled to summary judgment because (1) the Plaintiff's designated evidence relies upon inadmissible hearsay; (2) the Plaintiff's version of events are only supported by speculation and conjecture; (3) she lacked actual knowledge of any risk to the Plaintiff's safety; (4) she was not personally involved in any constitutional deprivation; and (5) she is entitled to qualified immunity. The Court concludes that there are numerous disputes of material fact. As such, the Defendant's Motion for Summary Judgment [DE 217] is denied.

### I. FACTUAL BACKGROUND

In April 2016, the Plaintiff was an inmate at the Indiana Department of Corrections. *See* Ex. A, Dep. of Kevin Martin, p. 8, DE 217-1. Creshaun Brinkley was also an inmate at the Indiana Department of Corrections. *Id.* at 22. The Defendant, who previously worked as a prison guard, was the Plaintiff's caseworker at the prison. *Id.* at 17–18.

On April 4, 2016, the Plaintiff gave the Defendant a request form to speak to Internal Affairs about an ongoing investigation into drug trafficking at the prison. *Id.* at 12, 16. On the

morning of April 13, 2016, Brinkley confronted the Plaintiff about this request. *Id.* at 22–24, 33–34. Brinkley had a copy of the request form in his hand. *Id.* at 34. The Plaintiff and Brinkley had a verbal altercation due to his request to speak with Internal Affairs. *Id.* at 22–23. Later that day, Brinkley started a large fire outside of the Plaintiff's prison cell. *Id.* at 19–20. The Plaintiff stated that "when I seen that fire, . . . [I] tried to put it out and everything. The smoke was just—it was so much smoke." *Id.* at 38. Prison staff extinguished the fire within a few minutes. *Id.* at 39.

The Plaintiff testified that the Defendant was involved in drug trafficking at the prison. *Id.* at 28. He further testified that a lot of the prison staff are "dirty. They quick to give somebody information about you." *Id.* at 29. He further stated that "nobody like a rat or a snitch in prison." *Id.* at 22–23. Notably, the following exchange occurred during the Plaintiff's deposition:

> Q. So this guy set a fire in front of your cell because you're a snitch?
> A. Right.
> Q. Yes?
> A. Yeah. That's it.
> Q. Okay. And the reason he knew you were a snitch was because of Sara Sinder?
> A. Yes, sir.
> Q. Okay. And the reason he knew you were a snitch from Sara Sinder was because he had a copy of the request form that you had filled out on April 4 and given to Sara Sinder?
> A. Yes, sir.
> Q. And . . . [t]he request form that you gave to Sara Sinder was supposed to go to Internal Affairs?
> A. Right.
> Q. And did the request form have something to do with an ongoing investigation into trafficking at the prison?
> A. Yeah, it had something to do with that, but it also had to do with trying to get off the range too, though.

*Id.* at 25–26.

The Defendant testified that she could not remember whether the Plaintiff sent her a request to speak with Internal Affairs. Ex. B, Dep. of Sara Sinder, pp. 74-75, DE 217-2. However, the Defendant stated that she would never give an inmate's request to speak with

2

Internal Affairs to another inmate. *Id.* at 98. She also stated that she was not aware of any threats made against the Plaintiff. *Id.* at 99.

Brinkley testified that the Defendant did not give him a copy of the request to speak with Internal Affairs. Ex. C, Dep. of Kreshaun Brinkley, p. 74, DE 217-3. Further, Brinkley stated that the Defendant did not tell him to start a fire or otherwise assault another inmate. *Id.* at 73. Likewise, Brinkley stated that he did not tell the Defendant that he was going to start a fire. *Id.* However, Brinkley stated that "people definitely look down on you if you're talking to Internal Affairs, absolutely." *Id.* at 59. Brinkley testified that other prisoners are "going to ask you, 'what do you want to talk to them for? You looking to snitch or you looking to try to do something to get off?'" *Id.* Brinkley was also asked the following question: "What's, like, the worst thing you could be as an inmate to other inmates?" *Id.* at 70. Brinkley responded as follows: "A snitch. We all know that." *Id.* Brinkley pleaded guilty to arson for setting the fire in front of the Plaintiff's prison cell. *See* Ex. D, Report of Disciplinary Hr'g, p. 1, DE 217-4.

## II.  STANDARD OF REVIEW

A court must grant summary judgment if the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and

3

justifiable inferences in that favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party cannot simply rest on its pleadings but must present evidence sufficient to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

### III.  DISCUSSION

The Defendant argues she is entitled to summary judgment because (1) the Plaintiff's designated evidence relies upon inadmissible hearsay; (2) the Plaintiff's version of events are only supported by speculation and conjecture; (3) she lacked actual knowledge of any risk to the Plaintiff's safety; (4) she was not personally involved in any constitutional deprivation; and (5) she is entitled to qualified immunity. The Court concludes that there are numerous disputes of material fact. As such, the Defendant's Motion for Summary Judgment is denied.

**A.     The Objection to the Plaintiff's Designated Evidence**

The Defendant argues that the Plaintiff's designated evidence relies upon inadmissible hearsay. The Court declines to definitively rule on the admissibility of the challenged statement because it is not necessary for the resolution of this Opinion and Order.

"'Hearsay,' in its simplest terms, is an out-of-court statement offered for the truth of the matter asserted." *Jordan v. Binns*, 712 F.3d 1123, 1126 (7th Cir. 2013) (citing FED. R. EVID. 801(c)). "But the Federal Rules of Evidence (FRE) contain numerous exceptions to the rule against hearsay. Additionally, FRE 801(d) exempts or excludes from the definition of 'hearsay' certain statements that otherwise would be hearsay." *Id.* (citing FED. R. EVID. 801, 803, 804). "And 'statements . . . that comprise multiple levels of potential hearsay are admissible if each part is admissible." *Id.* (quoting *United States v. Green*, 258 F.3d 683, 690 (7th Cir. 2001) (alterations in original)); *see also* FED. R. EVID. 805. "A party may not rely on inadmissible

4

hearsay to avoid summary judgment." *MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011) (citing *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997)).

During his deposition, the Plaintiff was asked the following question: "So [Brinkley] told you flat out [that he] got this [request form to speak with Internal Affairs] from Sara Sinder?" Dep. of Kevin Martin, p. 34, DE 217-1. The Plaintiff answered in the affirmative. *Id.* In his Response Brief [DE 221], the Plaintiff argues that this statement—in addition to other evidence—raises a dispute of material fact. In her Reply Brief [DE 223], the Defendant argues that this statement is inadmissible hearsay.

However, the Plaintiff also testified that he gave the Defendant a request form to speak with Internal Affairs. *See* Dep. of Kevin Martin, p. 12, DE 217-1. He further testified that he *observed* Brinkley holding a copy of this request form. *Id.* at 34. Specifically, the Plaintiff was asked to confirm the following information: "So [Brinkley] comes to you. *He has a copy of the request form.* He tells you he got it from Sara Sinder. You guys talk for about an hour. He tells you [that] you should consider moving somewhere else." *Id.* (emphasis added). The Plaintiff answered: "Right, and that's what I tried to do." *Id.* The Plaintiff was also asked the following question: "Okay. And the reason [Brinkley] knew you were a snitch from Sara Sinder was *because he had a copy of the request form* that you had filled out on April 4 and given to Sara Sinder?" *Id.* at 25 (emphasis added). The Plaintiff answered: "Yes, sir." *Id.* Because the Plaintiff observed Brinkley holding a copy of his request form, a reasonable inference is that the Defendant gave this form to Brinkley. This reasonable inference is supported without considering the purported hearsay statement. Thus, the Court need not address the admissibility of the challenged statement at this time. *See Wilburn v. Indiana*, No. 3:17-cv-059, 2020 WL

5

3065036, at *3 n.2 (N.D. Ind. June 9, 2020) (declining to address an evidentiary dispute that was not necessary for the resolution of the defendant's summary judgment motion). Certainly, the Defendant may renew this objection at trial or file a motion *in limine*.

**B.     Speculation and Conjecture**

The Defendant argues that the Plaintiff's version of events is based upon speculation and conjecture. *See, e.g.*, *Carmody v. Bd. of Trs. of the Univ. of Ill.*, 893 F.3d 397, 401 (7th Cir. 2018) (noting that "inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.") (internal quotation marks omitted). Certainly, if the matter proceeds to trial, a reasonable jury could find that the Plaintiff's testimony is not credible and that his accusations against the Defendant are spurious. However, the Court cannot engage in such credibility determinations at summary judgment. *See Johnson v. Rimmer*, 936 F.3d 695, 705 (7th Cir. 2019) (at summary judgment, the "court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.") (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)). Rather, the Court must view the record in the light most favorable to the nonmoving party. *Id.* at 706.

In this case, the Plaintiff testified that he gave the Defendant a request form to speak with Internal Affairs about drug trafficking at the prison. Dep. of Kevin Martin, p. 12, DE 217-1. The Plaintiff stated that he later observed Brinkley holding a copy of the request form. *Id.* at 25. A reasonable inference is that the Defendant gave Brinkley the request form so that Brinkley would intimidate or harm the Plaintiff. *See id.* at 25–26, 28. Further, it is undisputed that Brinkley set a fire outside of the Plaintiff's prison cell. *See* Report of Disciplinary Hr'g, p. 1, DE 217-4. Thus, for the purposes of summary judgment, the Plaintiff's version of events is not based upon speculation and conjecture.

C.     **Actual Knowledge**

The Defendant argues that she did not have actual knowledge of any risk to the Plaintiff's safety. The Court concludes that whether she had actual knowledge is a disputed issue of material fact.

"The Eighth Amendment's prohibition of 'cruel and unusual punishments' obligates prison officials to 'take reasonable measures to guarantee the safety of . . . inmates.'" *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (alteration in original)). "A prison official is liable for failing to protect an inmate from another prisoner only if the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837 (alteration omitted)); *see also Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016). "This includes two components: (1) 'the harm to which the prisoner was exposed must be an objectively serious one'; and (2) judged subjectively, the prison official 'must have actual, and not merely constructive, knowledge of the risk.'" *Lemmon*, 911 F.3d at 419 (quoting *Farmer*, 511 U.S. at 837).[1] Although the second component focuses on an official's subjective knowledge, a prisoner need not present direct evidence of the official's state of mind. *Gevas*, 798 F.3d at 480 (quoting *Farmer*, 511 U.S. at 842). Indeed, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (citations omitted).

---

[1] For the purposes of summary judgment, it is undisputed that the fire was an objectively serious harm.

In this case, the Plaintiff testified that the Defendant shared his request to speak with Internal Affairs about drug trafficking to Brinkley. *See* Dep. of Kevin Martin, p. 25, DE 217-1. The Plaintiff also stated that the Defendant was involved with drug trafficking in the prison. *Id.* at 28. It is undisputed in this case that "nobody like a rat or a snitch in prison." *Id.* at 22–23. Likewise, Brinkley testified that "people definitely look down on you if you're talking to Internal Affairs, absolutely." Dep. of Kreshaun Brinkley, p. 59, DE 217-3. Brinkley noted that other prisoners are "going to ask you, 'what do you want to talk to them for? You looking to snitch or you looking to try to do something to get off?'" *Id.* The Defendant, who was an experienced prison official, testified that she would never share a prisoner's request to speak with Internal Affairs with another prisoner. Dep. of Sara Sinder, p. 98, DE 217-2. A reasonable inference from the Defendant's testimony is that she was aware of the significant risks that prison snitches face. *See, e.g.*, *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008) ("Just because a correctional officer knows an inmate has been branded a snitch—*and it's common knowledge that snitches face unique risks in prison*—does not mean that an officer violates the Constitution if the inmate gets attacked.") (emphasis added).

Based upon this, a jury could reasonably find that the Defendant had actual knowledge of a substantial risk to the Plaintiff's safety. Specifically, a reasonable jury could find that the Defendant knew that sharing the Plaintiff's request with Brinkley was an excessive risk to the Plaintiff's safety. *See Gevas*, 798 F.3d at 477 (reversing the trial court's entry of judgment as a matter of law because "[w]ere a jury to credit Gevas's testimony that he alerted each of the defendants to his cellmate's threats to stab him, it could find that the defendants were aware of the danger posed to Gevas."); *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008) (factual issues precluded the entry of summary judgment for a prison guard who allegedly observed and

failed to stop an assault of an inmate). Further, when viewed in the light most favorable to the nonmoving party, a reasonable jury could find that the Defendant shared this information for the explicit purpose of harming or intimidating the Plaintiff. Accordingly, whether the Defendant had actual knowledge of an excessive risk to the Plaintiff's safety is a disputed issue of material fact.

### D.     Personal Involvement

The Defendant argues that she had no personal involvement in any constitutional violation. The Court concludes that her personal involvement is a disputed issue of material fact.

"It is well-established that a plaintiff only may bring a § 1983 claim against those individuals personally responsible for the constitutional deprivation." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614 (7th Cir. 2002) (citing *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001)); *see also Estate of Perry v. Wenzel*, 872 F.3d 439, 459 (7th Cir. 2017). "The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)).

In this case, the Plaintiff testified that he gave the Defendant a request form to speak to Internal Affairs about an ongoing investigation into drug trafficking at the prison. Dep. of Kevin Martin, pp. 12, 16, DE 217-1. He further testified that the Defendant gave this request to Brinkley. *Id.* at 25. As indicated above, sharing this type of information could result in significant harm to the Plaintiff. Further, the Plaintiff testified that the Defendant was involved with drug trafficking at the prison. *Id.* at 28. When viewed in the light most favorable to the nonmoving party, the Defendant shared this information with Brinkley for the explicit purpose of

intimidating or injuring the Plaintiff. As such, there is a dispute of material fact regarding the Defendant's personal involvement in this case.

### E.      Qualified Immunity

The Defendant also argues that she is entitled to qualified immunity. The Court concludes that the Defendant is not entitled to qualified immunity at this time.

"Qualified immunity shields public officials from liability when they act in a manner that they reasonably believe to be lawful." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (citing *Anderson v. Creighton*, 483 U.S. 635, 638–39 (1987)). "Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "The plaintiff carries the burden of defeating the qualified immunity defense." *Chasensky v. Walker*, 740 F.3d 1088, 1095 (7th Cir. 2014). "To overcome a defendant's invocation of qualified immunity, a plaintiff must show (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017) (internal quotation marks omitted). A right is clearly established when "there is 'a clearly analogous case establishing a right to be free from the specific conduct at issue' or that 'the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights.'" *Gonzalez*, 578 F.3d at 540 (quoting *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001)); *see also Chasensky*, 740 F.3d at 1094. "If *either* inquiry is answered in the negative, the defendant official is entitled to summary judgment." *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014) (emphasis in original).

When the facts are viewed in the light most favorable to the nonmoving party, the Defendant was involved in drug trafficking at the prison. Dep. of Kevin Martin, p. 28, DE 217-1.

When the Plaintiff requested to speak with Internal Affairs, the Defendant shared this request with Brinkley. *Id.* at 12, 16, 25. A reasonable inference is that the Defendant was aware of the excessive risk to the Plaintiff's safety; namely, that Brinkley would attack the Plaintiff due to his newfound status as a snitch. *See id.* at 25–26. If so, the Defendant violated the Eighth Amendment's prohibition on cruel and unusual punishment. *See Lemmon*, 911 F.3d at 419. Further, failing to protect the Plaintiff from a known risk—specifically, the known risk that Brinkley would assault or otherwise attack the Plaintiff because he was a snitch—violated clearly established law. *Gevas*, 798 F.3d at 484 ("As we have been saying, it is defendants who have the duty to protect a prisoner once they become aware he is in danger of assault by another prisoner, and this is a now well-settled aspect of Eighth Amendment jurisprudence."). Moreover, to the extent that the Defendant retaliated against the Plaintiff due to his request to speak to Internal Affairs, such conduct violates clearly established law. *See Pearson v. Welborn*, 471 F.3d 732, 742 (7th Cir. 2006) ("[A] reasonable public official in Welborn's position would understand that retaliating against a prisoner on the basis of his complaints about prison conditions is unlawful."); *Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996) ("A prison official in McDaniel's position therefore would have been on notice that *any* retaliation, whatever its shape, could give rise to liability.") (emphasis in original). Thus, for the purposes of summary judgment, the Defendant is not entitled to qualified immunity.

## IV.  CONCLUSION

For the reasons stated above, the Defendant's Motion for Summary Judgment [DE 217] is DENIED.

SO ORDERED.

ENTERED: June 15, 2020

                                          /s/ JON E. DEGUILIO
                                        Chief Judge
                                        United States District Court